IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| IN THE MATTER OF THE SEARCH OF: | ) | FILED UNDER SEAL |
|---|---|---|
| | ) | |
| THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 423-441-0164 (Target Telephone 7) | ) ) ) | Case No. 1:23-mj-93 |

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Lauren A. Moon, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **423-441-0164**, hereafter referred to as "**TT7** and/or **Target Telephone #7**" or "the Target Cell Phone", further described in Attachment A, incorporated by reference herein, whose service provider is AT&T, headquartered at 11760 US HWY 1, Palm Beach, FL 33408. The listed subscriber of **Target Telephone #7** is "Prepaid Customer" and the subscriber address is "123 Your Street Your Town, GA 37409". Based on your affiant's training and experience, this is common standardized subscriber data consistent with prepaid lines that do not require identifying information to register a phone number with a carrier. **Target Telephone #7** is described herein and in Attachment A. The location information to be seized is described herein and in Attachments B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The

requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Task Force Officer with the United States Postal Inspection Service. I am further employed as a Special Agent with the Tennessee Bureau of Investigation and currently assigned to the Drug Investigation Division for the Eastern District of Tennessee. I have been employed in that capacity since August of 2019. As such, I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and empowered by law to conduct investigations of, among other things, offenses enumerated in Title 18, United States Code, Section 2516.

4. In connection with my official TBI and USPIS duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848.

5. I have been employed as a Special Agent with the Tennessee Bureau of Investigation since August of 2019. Prior to my employment with Tennessee Bureau of Investigation, I served as a local law enforcement officer with the East Ridge Police Department in Hamilton County, Tennessee for five years. During my employment with the East Ridge Police Department, I held positions of increasing responsibility to include my final assignment as an Investigator with the Crime Suppression Unit which specialized in drug, human trafficking, and criminal gang investigations.

6. I have previously attended and graduated from the Tennessee Law Enforcement Training Academy where I became a post-certified police officer within the state of Tennessee. I also attended the Tennessee Bureau of Investigation's Special Agent Academy and numerous other specialized schools specifically related to criminal investigations, proper investigative techniques,

and evidence handling. In the performance of my duties, I have conducted and participated in numerous investigations involving weapons and controlled substances and other general investigations of the State and Federal laws, including the manufacture, sale, distribution, importation, possession, and conspiracy to possess or sell and distribute various controlled substances. These investigations have utilized various investigative tools and techniques, including but not limited to: the use of confidential informants, undercover operations, search warrants, interviews, surveillance, controlled purchases, and the interdiction of deliveries and shipments and controlled substances. I have received training in the field of drug investigation, detection, and prosecution from the Tennessee Bureau of Investigation, Tennessee Law Enforcement Academy, TBI Wiretap Certification School, as well as advanced narcotics training from the 'Regional Counterdrug Training Academy'. I am currently assigned to the Tennessee Bureau of Investigation's Drug Investigation Division in Hamilton County, TN, and I am also assigned a federal task force officer with the United States Postal Inspection Service.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) have been committed, are being committed, and will be committed by Aundre Dupree DUMAS, using **Target Telephone #7.** There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

9. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

1. The United States is conducting a criminal investigation of Aundre Dupree DUMAS, herein after referred to as DUMAS, and other members of the 357 Crip Drug Trafficking Organization (DTO) regarding possible violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b).

2. Since June of 2021, USPIS, ATF, and TBI enforcement have been conducting an investigation into the 357 Crip DTO following the seizure of a USPS parcel containing a large quantity of fentanyl and marijuana. During the investigation, agents learned two 357 Crips from the state of California had extended their drug trafficking network to the Eastern District of Tennessee. One subject was identified as DUMAS, and the second subject was identified as DUMAS'S known associate, Nolan MCHENRY aka "Yak". Both subjects were identified as 357 Crips from the state of California with extensive criminal histories to include drug trafficking offenses. This investigation led agents to learn that DUMAS and MCHENRY had connected with local 357 Crips and their associates in the Chattanooga, TN area which enabled this DTO to distribute large quantities of marijuana, methamphetamine, and fentanyl in the Eastern District of Tennessee based on the connection to local 357 Crip drug distributors.

3. It was determined throughout the investigation that the above-mentioned individuals, specifically DUMAS, has been directing and facilitating various members of the 357 Crip gang in EDTN to distribute narcotics. This information has been corroborated through various

jail calls where DUMAS is recorded discussing members not being able to "hustle" appropriately, specifically when given a "blueprint". Based on your affiant's training and experience, the term "hustle" is often slang for narcotics distribution. The context of this conversation indicated that other members of this DTO led by DUMAS had failed to succeed with the drug trafficking and associated profits despite have the source (DUMAS) and means to distribute narcotics and profit from said sales.

4. During the ongoing investigation, information was obtained that indicated this 357 Crip DTO was utilizing parcel services to include the United States Postal Service and FedEx to obtain large quantities of methamphetamine, marijuana, and fentanyl from the state of California where DUMAS and MCHENRY are from. Additionally, agents have learned this DTO has acquired storage units which appear to be utilized to store the illegal drugs and/or their proceeds. This ongoing investigation has led agents to learn that this DTO has extended their drug trafficking network from the Eastern District of Tennessee, and are now operating in the Middle, Western, and Eastern District of Tennessee.

5. On January 5, 2022, this agent received information via USPS business records that a USPS parcel was scheduled to be delivered to Roderick WILLIAMS'S residence on this date at 120 North Magnolia Avenue South Pittsburg, TN 37380. Based on the query of USPS business records, this agent was able to identify commonalities with this parcel and a parcel that was previously seized that contained approximately 496 grams of fentanyl that was subsequently accepted by another 357 Crip associate in Chattanooga, TN

6. Roderick WILLIAMS, aka "Rock", was a known to be a 357 Crip associate, and brother to a high-ranking 357 Crip identified as Broderick AUTRY aka "Tank". Agents conducted surveillance prior to, and after the delivery, and observed Aundre DUMAS, Roderick

WILLIAMS, and Tamia MALONE in the driveway at the residence where the parcel was addressed.

7.  After the parcel was delivered, a traffic stop was conducted on DUMAS in a 2019 Jeep Cherokee with Tennessee Registration "04BF65" after he left from this residence where agents were conducting surveillance. A search of his vehicle yielded no contraband and DUMAS advised law enforcement officers he had recently moved to 936 Mountain Creek Road Apt 195 Chattanooga, TN 37405.

8.  On June 21, 2022, DUMAS, and his girlfriend, Kiera FOWLER, were arrested by the Chattanooga Police Department at 936 Mountain Creek Road Apt Q-195 Chattanooga, TN 37405. DUMAS was charged with Unlawful Possession of a Firearm by a Convicted Felon. This arrest stemmed from a probation search of this apartment which was maintained by the couple. During the course of the probation search officers located numerous amounts of drug paraphernalia, numerous phones, a small bag of marijuana, and a Springfield Saint 7.62x51 with a loaded magazine which was reported stolen from Texas.

9.  In December of 2022, a Confidential Informant (CI) provided TBI SA Boyd with information that an individual named "DOC" was distributing fentanyl and methamphetamine in Tennessee. The CI provided three phone numbers for this subject, and two of the numbers, when run through a law enforcement database returned to Aundre Dupree DUMAS and links the current ongoing investigation. Additionally, this agent supplied SA Boyd with a photograph of DUMAS to which the CI confirmed that to be the individual to be who he knew as "Doc".

DUMAS was identified by the CI as currently living at 838 Rushing Drive, Clarksville, TN after moving from Chattanooga, TN, which was verified by agents.

10. The CI advised that DUMAS had been traveling to Chattanooga to distribute narcotics, specifically 2107 Taylor Street Chattanooga, TN 37406. This was a known secondary address for Zaczery TONEY, another known 357 Crip Drug Distributor that was being investigated as a part of this ongoing investigation. TONEY was known to law enforcement from a prior controlled purchase other investigative efforts being conducted to be a distributor of both methamphetamine and fentanyl. Since December of 2022, this CI has consistently provided credible information regarding DUMAS that was corroborated through photos, surveillance, GPS location data, and call detail records.

11. On December 29, 2022, the CI informed TBI SA Boyd that DUMAS traveled to a storage unit facility in Nashville before traveling to 2107 Taylor Street. The CI advised DUMAS arrived back in Clarksville and was in possession of large quantity of Xanax pills.

12. On January 13, 2023, the CI provided information that DUMAS was traveling to Chattanooga at approximately 1:00 PM. The CI provided information that DUMAS was picking up money from TONEY'S "baby momma" and that DUMAS was in possession of at least a pound of methamphetamine that he was bringing to TONEY. Agents were familiar with 2107 Taylor Street and knew of it to be a residence where one of TONEY'S children resided and he was known from surveillance to frequent this locale often.

13. On January 13, 2023, your affiant, ATF SA Saint Louis and SA Larkins conducted surveillance in the area of 2107 Taylor Street. Agents were unable to witness DUMAS at 2107 Taylor Street, however, your affiant observed TONEY at 2107 Taylor Street at approximately 6:41 PM and then returning to 1704 N. Chamberlain Avenue at approximately

7:37 PM. Based on information provided by the CI, DUMAS had left from 2107 Taylor Street just minutes prior to law enforcement getting in the area and observing TONEY at 2107 Taylor Street.

14. On February 13, 2023, a federal search warrant was executed at TONEY'S residence at 1704 North Chamberlain Avenue Chattanooga, TN 37406. TONEY and two minor children were located in the residence. As a result of the search warrant execution, approximately 49 grams of fentanyl and approximately 150 grams of marijuana were seized. A cellular device belonging to TONEY was also seized and a federal search is pending. Since October of 2022, multiple avenues of surveillance (remote and mobile) have observed TONEY and behavior consistent with narcotics distribution to include several observed hand-to-hand transactions at 1704 North Chamberlain Avenue between TONEY and his customers. This surveillance coupled with the items seized during the residential search warrant along with call detail records have identified TONEY as a mid-level narcotics distributor directly under DUMAS.

15. Less than an hour after the search warrant was executed at TONEY'S residence, agents learned that MCCULLOUGH, a high ranking 357 Crip, was in contact with both Kevin DAVIS, 615-979-8132 (TT8), and Aundre DUMAS 931-436-3970 (TT6), both of which are known by agents to hold rank within the 357 Crips over TONEY.

16. At the time of this search warrant, agents were actively monitoring a court ordered pen register on Michael MCCULLOUGH'S phone number identified as 423-355-6769 (TT2). Agents were also able to monitor and review a call made by Marquel ALEXANDER, a 357 Crip currently incarcerated in Madison County, AL. ALEXANDER called MCCULLOUGH on February 13, 2023, and they discussed the search warrant at TONEY'S residence and "pimp dude", known to agents as DUMAS, told him that they were all going to wind up in a "RICO"

case. This agent is familiar with the term RICO and knows of it to represent Racketeer Influenced and Corrupt Organizations that commonly prosecute groups as a whole to include criminal street gang members that act in conjunction with one another to distribute illegal drugs and/or commit other criminal violations.

17. Prior to the arrest of TONEY, DUMAS was known to have utilized a phone number also serviced by AT&T Mobility identified as 931-436-3970 (TT6). Call detail records were obtained on that phone number from October 22, 2022, to February 1, 2023. The listed subscriber of that phone number was "Luke Cage" of 617 Idlewood Drive Clarksville, TN 37043. The phone records confirmed an activation date of TT6 as October 22, 2022.

18. Call detail analysis of TT6 showed frequent contact with other members of the 357 Crip DTO to include Broderick AUTRY aka "Tank", Gary SHROPSHIRE aka "Future" (known methamphetamine distributor), Kevin DAVIS aka "Seven" aka "Lil Seven"(known methamphetamine distributor), Rickey CHAPMAN aka "Slime" aka "Nike" (known fentanyl distributor), Zaczery TONEY aka "Z Cuz" aka "Tricky" (known fentanyl and methamphetamine distributor), and Michael MCCULLOUGH aka "Poo-C".

19. On February 17, 2023, ATF SA Larkins reviewed another jail call made by ALEXANDER to his girlfriend, Brandy MELVIN. While on the call, ALEXANDER stated he needed to call "pimp dude" and MELVIN then dialed his number on a three-way call. ALEXANDER and DUMAS communicate about the search warrant execution at TONEY'S residence and problems with the 357 Crips getting arrested with narcotics. ALEXANDER tells DUMAS that he doesn't need to go down "there" with them anymore. Based on agent's knowledge of DUMAS living in Clarksville, TN and transporting the drugs to lower-ranking 357 Crips in Chattanooga, the context of this statement showed ALEXANDER suggesting to

Page 9 of 14
Case 1:23-mj-00093-CHS   Document 4   Filed 04/05/23   Page 9 of 17   PageID #: 16

DUMAS that he shouldn't go to Chattanooga, TN anymore. ALEXANDER told DUMAS he knew that DUMAS would be changing phone numbers soon and to ensure that he was able to get the new phone number.

20. On February 21, 2023, TBI SA Joey Boyd contacted this agent and advised the CI contacted him and provided a new phone number for DUMAS, identified as 423-441-0164 (TT7). The CI advised that on February 20, 2023, DUMAS was in Nashville, TN, and the CI later advised SA Boyd on February 23, 2023, that DUMAS was going to be traveling to the Knoxville, TN area. The CI believed this trip would be for the obtainment of fentanyl citing a previous time in which DUMAS was out of Fentanyl and traveled to Knoxville, TN, returned to Clarksville, TN and was in possession of Fentanyl. Thus, the CI advised while he/she did not have direct knowledge of who DUMAS was meeting, he/she believed DUMAS'S fentanyl source was in Knoxville, TN area.

21. In March of 2023, TBI SA Boyd advised your affiant the CI advised him that DUMAS has continued to utilize TT7 when communicating with him/her. The CI further advised DUMAS had been making statements about trying to extend his business into the cocaine and crack cocaine market and had been checking around about prices for a large purchase.

22. Your Affiant believes based on training, experience, and knowledge of this investigation that Aundre Dupree DUMAS is utilizing **TT7** to facilitate the distribution of illegal drugs as well as transport illegal cash proceeds from the drug transaction in the Eastern District of Tennessee.

23. Your affiant has conducted a call detail analysis comparison of DUMAS'S previous phone number, TT6, and recently obtained call detail records for TT7. Based on the call detail analysis it appears that that TT6 and TT7 had several common callers to include several

members and associates of the 357 Crip DTO to include: Broderick AUTRY aka "Tank", Kevin DAVIS aka "Seven" aka "Lil Seven", and Brandy MELVIN (girlfriend of 357 Crip Marquel ALEXANDER). Additionally, from February 14, 2023, to present date, TT7 had several additional common callers with TT6 that appear to be DUMAS top callers on both his old phone number TT6 and TT7 further confirming DUMAS'S current use of TT7.

24. Your Affiant believes that DUMAS is using **TT7** to commit violations of 21 U.S.C. 841, 846, and 843 within the Eastern District of Tennessee. Affiant is seeking this search warrant to identify the locations that DUMAS is using to store narcotics and illegal proceeds from narcotics transaction, and to identify when and where these narcotics are being transported toin the Eastern District of Tennessee.

**Verification of Aundre Dupree DUMAS as User of Telephone**

25. Your Affiant believes that based upon the aforementioned probable cause, that Aundre Dupree DUMAS is using **Target Telephone Phone #7** to facilitate his drug trafficking activities and in the furtherance of this drug conspiracy. I believe that obtaining the requested geo-location of **Target Telephone Phone #7** through AT&T will allow investigators to locate the subject(s) utilizing the Target Cell Phone without jeopardizing the investigation and therefore investigators will more likely be successful in obtaining the necessary evidence to further their investigation. I further believe that the requested search warrants will enable investigators to more effectively collect evidence of the crimes being committed by the targeted organization, identify locations utilized by the organization to facilitate their criminal activities, identify co-conspirators and their locations.

26. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone

service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

27. Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's networks or with such other reference points as may be reasonably available.

28. Based on my training and experience, I know that AT&T can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T typically collect and retain

cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**AUTHORIZATION REQUEST**

29. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

30. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrants, the proposed search warrants do not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrants authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

31. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including

by initiating a signal to determine the location of the Target Cell Phone on AT&T's networks or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

32. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Respectfully submitted,

*Lauren Moon*
Lauren Moon
Task Force Officer USPIS
Special Agent TBI

Subscribed and sworn to before me on ___April 5___, 2023

_____
HONORABLE CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number 423-441-0164, ("**Target Telephone #7**") whose wireless service provider is AT&T, a wireless telephone service provider whose legal compliance center is headquartered at 11760 US HWY 1, Palm Beach, FL 33408.

2. Records and information associated with the **Target Telephone #7** that are within the possession, custody, or control of AT&T including information about the location of the cellular telephone if they are subsequently assigned a different call number.

# ATTACHMENT B

## Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

All information about the location of the **Target Telephone #7** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Telephone #7**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T. AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of the **Target Telephone #7** on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

Page **1** of 2
Case 1:23-mj-00093-CHS   Document 4   Filed 04/05/23   Page 16 of 17   PageID #: 23

II.  **Information to Be Seized by the Government**

**IF LOCATION INFORMATION IS EVIDENCE OF A CRIME:**

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) involving Aundre Dupree DUMAS or unidentified subject(s).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.